**T. Dewayne LOWE, etc., Plaintiffs,**

v.

**METABOLIFE INTERNATIONAL, INC., et al., Defendants.**

**No. 01–CV–0538–BH–M.**

United States District Court, S.D. Alabama, Southern Division.

June 18, 2002.

Joseph M. Allen, Jr., Robert S. Ramsey, Johnstone, Adams, Bailey, Gordon & Harris, Mobile, AL, Donna Ward Black, Ramsey Law Firm, Mobile, AL, Philip Bohrer, Bohrer Law Firm, Baton Rouge, LA, for T. Dewayne Lowe.

Edward G. Bowron, John P. Kavanagh, Jr., Pierce, Ledyard, Latta Wasden & Bowron, P.C., Mobile, AL, for Metabolife International, Inc., Nancy May.

Bert P. Taylor, Orange Beach, AL, for The Chemins Company, Inc.

## ORDER

HAND, Senior District Judge.

This matter is before the Court on the Defendants'[1] motion (Doc. 35) to dismiss certain claims, or, in the alternative, a motion for partial judgment on the pleadings, supporting brief (Doc. 36), and the Plaintiff's response (Doc. 43). For the reasons that follow, the motion is due to be **GRANTED IN PART, DENIED IN PART**. As it relates to Counts Two, Three, and Four, the motion is **due to be and is hereby GRANTED**. As it relates to Count Five, the motion is **due to be and is hereby DENIED**.

## I. STANDARD OF REVIEW

The Defendants move for dismissal of four of the Plaintiff's five claims pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c). Rule 12(b)(6) authorizes the Court to dismiss a claim where Plaintiff has failed to state a claim upon which relief can be granted. Rule 12(c) provides for Judgment on the pleadings. In deciding both motions, the Court accepts the facts in the complaint as true and views them in the light most favorable to the nonmoving party. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998) (Rule 12(c)); *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1188–89 (11th Cir.1997) (Rule 12(b)(6)). Likewise, the Court will grant both motions if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hawthorne*, 140 F.3d at 1370, *Lopez*, 129 F.3d at 1188–89, both quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

1. The motion was originally filed only by Defendant Metabolife, but was later joined by

## II. BACKGROUND

The Defendants distribute and sell an over-the-counter dietary supplement containing caffeine and ephedra under the trade name "Metabolife 356®." Plaintiff's wife, Vicki L. Lowe, then age 35, died of a heart attack on June 26, 1999. Plaintiff alleges that Vicki consumed Metabolife 356® and that the product caused or contributed to her death on June 26, 1999. Plaintiff's complaint (attached at Doc. 1) contains five counts, which are:

1. A claim under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD),

2. A claim based on "breach of implied warranty of fitness," which appears to include (1) alleged breach of warranty of merchantability, and (2) alleged breach of warranty of fitness for particular purpose: "Defendants expressly represented and warranted that the product was safe, and impliedly warranted that the product was reasonably fit for its intended purpose, and was of marketable quality." (Complaint at ¶ 30).

3. Claims based on negligence, which include (1) a claim that the Defendants negligently breached their duty to not place a dangerous product into the stream of commerce, and (2) a claim that the Defendants negligently breached their duty to warn consumers of the "potentially dangerous aspects of [their] product." (Complaint at ¶¶ 34–35).

4. Claims based on "wantonness," which are identical to Count Three, except for substituting the words "wanton," "wantonness" and "wantonly" for "negligent," "negligence" and "negligently." (Complaint at ¶ 37).

Defendant Chemins, (Doc. 40).

5. Claims based on fraudulent misrepresentation, suppression, concealment and deceit. (Plaintiff's Complaint, at ¶ 38–40).

## III. CONCLUSIONS OF LAW AND ANALYSIS

In their motion, Defendants argue that, as a matter of law, four of the five "counts" in the Plaintiff's complaint must be dismissed because they are subsumed within the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD.") In other words, the Defendants argue, these four counts do not provide independent basis of recovery. Defendants argue that all Plaintiff's claims except for those in Count One, the AEMLD claims, should be dismissed as subsumed by the AEMLD. The Court will examine each of the four counts in turn.

### A. Count Two: Plaintiff's Breach of Implied Warranty of Fitness Claims

Plaintiff has conceded that the Defendants' motion is **due to be GRANTED** as to Count Two. *See* (Doc. 43, p. 2, n. 1).

### B. Counts Three and Four: Plaintiff's Negligence and Wantonness Claims

Plaintiff articulates his claims in Count Three as negligence claims, and makes identical wantonness arguments in Count Four. Count three comprises paragraphs 33–35 of the Plaintiff's complaint. Paragraph 33 simply adopts the preceding paragraphs which provide the factual backdrop for Plaintiff's claims. Paragraph 34 states that the Defendants owed the decedent two duties, and paragraph 35 states how the Defendants allegedly breached these duties. The first duty that the Plaintiff alleges the Defendants owed to his wife was the "duty to make and sell a product which was reasonably safe and not dangerous for the ultimate consumer." (Complaint, ¶ 34). Plaintiff alleges that the Defendants breached this duty when "they did not make and distribute a reasonably safe and not dangerous product..., and failed to provide safeguards to prevent the injuries sustained..." *Id.* at ¶ 35. The second duty that the Plaintiff alleges the Defendants negligently breached was the "duty to reasonably, adequately, and properly warn the ultimate consumer, Victoria Norman Lowe, of potentially dangerous aspects of its product, if those existed, and not deliberately withhold issuing warnings regarding said product." *Id.* at ¶ 34. The Plaintiff alleges that the Defendants breached this second duty when they "failed to warn of the known risks associated with the use of Metabolife." *Id.* at ¶ 35 (also stating that Metabolife "lacked sufficient warnings of the hazards and dangers to users..."). Count Four, *Id.* at ¶ 37, simply substitutes "wantonness" for "negligence." For ease of discussion, the Court will separate the two duties, (1) making a safe product and (2) warning of the dangers of their product, which the Plaintiff alleges the Defendants breached. But first, the Court will take a brief look at the AEMLD.

■ This Court recently capsulized the AEMLD:

"The Alabama Supreme Court first established the AEMLD in *Casrell v. Altec Indus., Inc.,* 335 So.2d 128 (Ala.1976), and *Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976). Under this doctrine, 'a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a Matter of law.' " *Casrell,* 335 So.2d at 132.

To establish liability under the AEMLD, a plaintiff must prove:

1. he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

2. Showing these elements, the plaintiff has proved a prima facie case although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

*Casrell*, 335 So.2d at 132–33; *see also, Atkins*, 335 So.2d at 141.

As explained in, *Pitts v. Dow Chemical Co.,*

> [w]hile the AEMLD has much in common with the doctrine of strict liability in tort found in § 402A of the Restatement (Second) of Torts (1965), it is more accurately described as a hybrid of strict liability and traditional negligence concepts. *Casrell*, 335 So.2d at 132; *Atkins*, 335 So.2d at 139. On the one hand, the AEMLD is akin to strict liability because selling an unreasonably dangerous product—that is, a defective product—is deemed to be negligent as a matter of law: "[l]iability ... attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks." *Atkins*, 335

So.2d at 141. On the other hand, in contrast to the purely "no-fault" version of strict liability found in the Restatement, the AEMLD retains various affirmative defenses, including contributory negligence, assumption of the risk, and, under certain circumstances, *the lack of a causal relation. Casrell*, 335 So.2d at 134; *Atkins*, 335 So.2d at 143.

(emphasis added) 859 F.Supp. 543 (M.D.Ala.1994).

*Brock v. Baxter Healthcare Corp.,* 96 F.Supp.2d 1352, 1356 (S.D.Ala.2000). When a plaintiff makes a claim that duplicates the AEMLD's coverage, the Court will dismiss the redundant claim, and will allow the Plaintiff to proceed only on the AEMLD claim. *See Veal v. Teleflex, Inc.,* 586 So.2d 188, 191 (Ala.1991) (plaintiffs sued boat manufacturers and dealers for wrongful death caused by a boating accident; trial court charged the jury on the AEMLD, but refused to charge separately on negligence and wantonness, and the Alabama Supreme Court affirmed, holding that claims that a defendant negligently or wantonly marketed a product which, when used as intended, injured a plaintiff were the essence of and were therefore subsumed by the AEMLD).

### 1. Plaintiff's Unreasonably–Dangerous–Product Claims

From the description of the AEMLD, it is clear that the first of the Plaintiff's negligence theories, that Defendants breached their "duty to make and sell a product which was reasonably safe and not dangerous for the ultimate consumer," is covered and therefore subsumed by the AEMLD. (Complaint, ¶ 34). Claims like this are at the very core of the AEMLD. *See Spain v. Brown and Williamson Tobacco Corp.,* 230 F.3d 1300,

1310 (11th Cir.2000) (cigarette case, holding similar negligence claim was subsumed by AEMLD); *Pitts v. Dow Chem. Co.*, 859 F.Supp. 543, 551 (M.D.Ala.1994) ("the AEMLD is the sole cause of action for negligence when the factual basis for the charge of negligence is that the defendant set a defective product into the stream of commerce"). For this reason, the Defendants' motion, as it relates to the unsafe design claims in Counts Three and Four, is **due to be GRANTED.**

### 2. Plaintiff's Failure–to–Warn Claims

However, whether Plaintiff's second theory, negligent failure-to-warn, is properly subsumed is not as clear. In fact, the federal courts in Alabama have split over whether the AEMLD "subsumes" or, as the Northern District of Alabama put it, "swallow[s] up" like a "doctrinal leviathan," traditional negligent failure-to-warn claims. *McClain v. Metabolife*, 193 F.Supp.2d 1252, 1255 (N.D.Ala.2002). This is because "Alabama cases…seem to support two contrary conclusions: under *Veal*, negligence claims merge with the AEMLD, while another line of cases…allows negligent-failure-to-warn claims to survive separately from the AEMLD." *Grimes v. General Motors Corp.*,205 F.Supp.2d. 1292, 1295 (M.D.Ala.2002). The Northern District of Alabama has in-

terpreted Alabama Supreme Court precedent as allowing both claims to proceed simultaneously. *See McClain,* 193 F.Supp.2d at 1256–57 (allowing plaintiff to maintain their negligent failure to warn claim apart from their AEMLD claim, as AEMLD "design defect claims are fundamentally different from failure to warn claims"). However, the Eleventh Circuit and this Court have held that the AEMLD subsumes traditional negligent failure-to-warn claims. *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1310, 1312 (11th Cir.2000), ("In light of Veal, and because the only allegation in the complaint's counts for negligence and wantonness that are not in the AEMLD count is that the '[d]efendants negligently designed, manufactured, sold, marketed and/or failed to warn about cigarettes that were unreasonably dangerous …,' we are convinced that the negligence and wantonness claims in this case merge into the AEMLD claim, but 'we also invite that Court to tell us if the conclusions we have reached about' " whether "negligence and wantonness claims merge into an AEMLD claim")[2]; *Johnson v. General Motors Corp.*, 82 F.Supp.2d 1326, 1328–29 (S.D.Ala.1997) (holding that plaintiff's failure to warn claim could not proceed independent of plaintiff's AEMLD claim).[3]

In this case, this Court will stick to the view it took in *Johnson,* and which the Eleventh Circuit took in *Spain.* The

**2.** As of the date on which this order was issued, the Alabama Supreme Court had not corrected the Eleventh Circuit's holding in *Spain*, 230 F.3d at 1310.

**3.** The Northern District cites this Court's opinion in *Tillman v. Reynolds Tobacco Co.*, 89 F.Supp.2d 1297, 1299–1300 (S.D.Ala. 2000), as standing for its view that AEMLD claims do not subsume negligent failure to warn claims. *McClain,* 193 F.Supp.2d at 1256. But that was not the holding of *Tillman.* In *Tillman,* the Court held that negligent and wanton design claims *do* merge into AEMLD claims. The *Tillman* plaintiff cited a

string of the some of the same cases that the Plaintiff in the instant case does to show that Alabama courts have allowed traditional tort theory claims to proceed alongside AEMLD claims. Recognizing (1) the scattered approach that Alabama courts have taken in answering whether negligent-failure-to-warn claims are subsumed by the AEMLD, and (2) the uniform approach that Alabama courts have taken in answering whether negligent-design claims are subsumed, the Court stated that the first category was "inapposite" in light of the second. *Id.*

Court bases this adherence on the Alabama Supreme Court's recent explanation of the AEMLD in *Ex Parte Chevron Chem. Co.*, 720 So.2d 922 (Ala.1998). There, the court addressed Chevron's assertion that "the substance of the affirmative defense of a warning under the AEMLD is not distinct from the duty to warn under [Restatement (Second) of Torts] § 388," the provision explaining negligent-failure-to-warn liability. *Id.* at 926. In *Chevron*, the court started by examining several different courts' interpretations of Restatement (Second) of Torts § 402A, which, like the AEMLD, is a hybrid of strict liability and negligence principles. *Id.* at 927–28. Both these doctrines have strict liability features, "the manufacturer's reasonable care in preparing the product and the user's privity with the manufacturer are not relevant," but also have traditional negligence features, "the concept of an 'unreasonably dangerous' product takes into account the user's awareness of the danger and that awareness may be enlightened by a warning." *Id.*, citing *Casrell*, 335 So.2d at 133–34, *Restatement (Second) of Torts* § 402 A(2)(a), (b). The cases that the *Chevron* Court collected all stand for the proposition that "failure-to-warn claims in strict liability and in negligence duplicate one another." *Id.* at 928, *citing Klem v. E.I. DuPont De Nemours Co.*, 19 F.3d 997, 1001–03 (5th Cir.1994).

■ Since the AEMLD's "concept of an 'unreasonably dangerous' product takes into account the user's awareness of the danger and that awareness may be en-

lightened by a warning," the warnings and advisories attached to a product are just as much a part of the product as the cogs, sprockets, and widgets when a jury is examining whether the product is "unreasonably dangerous."[4] *Id.* at 927. This principle is especially appropriate in the case of over-the-counter drugs or pill-form dietary supplements, where the pill itself is nondescript, and the only thing that can shape its use is the advice of the manufacturer. *Cf. Stone v. Smith, Kline & French Labs.*, 447 So.2d 1301, 1303–04 (Ala.1984) (properly prepared prescription drugs are "unavoidably unsafe," and thus "the adequacy of the accompanying warning determines whether the drug, as marketed, is defective, or unreasonably dangerous" under the AEMLD) *citing Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1274 (5th Cir.1974), *quoting* Restatement (Second) of Torts § 402A cmt. k (1965). With pills like Metabolife, it is all the more clear that the advice and warnings of the manufacturer are a part of the product itself, which the Court must examine to determine if the product is "unreasonably dangerous." Thus, the AEMLD takes the manufacturer's alleged failure to warn into account, and the Plaintiff is not shortchanged in any way by the Court's holding that the AEMLD subsumes the inadequate warning claim.

Therefore, the Court will hold as the *Chevron* Court noted: to allow a failure to warn claim to proceed to a jury under both the AEMLD as described above and under traditional tort principles " 'would generate confusion and may well result in inconsis-

---

4. The warning factor comes in as an affirmative defense under the AEMLD: if a manufacturer can prove that he gave the end-user adequate warning of the dangers that the user asserts caused him harm, the manufacturer is free from liability. This is because the user, who was made aware of the dangers inherent in using the product, assumed the risk of injury from these dangers by using the product anyway. *See, e.g., Chevron*, 720 So.2d at 929 ("for the same reasons that Chevron has no legal duty to warn Lawley and Bryant under pure negligence principles, it has a complete affirmative defense under the AEMLD").

tent verdicts.'" *Chevron,* 720 So.2d at 928 n. 6, *quoting Restatement (Third) of Torts,* cmt. n (1997). Thus, the Defendants' motion to dismiss, as it relates to the Plaintiff's claims of negligent and wanton failure to warn is **due to be and. is hereby GRANTED.**

### C. Count Five: Plaintiff's Fraudulent Misrepresentation, Suppression, Concealment and Deceit Claims

██ As to the fraud claims made in Count Five, the Defendant's motion fails because the Defendant has failed to carry its burden of showing why the claims ought to be dismissed. Instead, the Defendant equated the fraud claims to failure-to-warn claims and then re-hashed the failure-to-warn arguments that prevailed above. The Court sees these fraud claims as different, even if ever so slightly, from the dangerous design claims covered by the AEMLD: the fraud claims seem to deal more with *why* the Mrs. Lowe used Metabolife to her alleged detriment, while the AEMLD claims deal with *how* Metabolife caused the alleged detriment. Because of this slight distinction, but more because of the Defendant's failure to carry its burden, the Defendant's motion to dismiss, as it relates to the Plaintiff's claims in Count Five is **due to be DENIED.**

## IV.  CONCLUSION

For these reasons, the Defendant's motion to dismiss is **due to be GRANTED IN PART, DENIED IN PART.** As it relates to Counts Two, Three, and Four, the motion is **due to be GRANTED;**[5] as it re-

lates to Count Five, the motion is **due to be DENIED.**

---

5. In his brief, the Plaintiff argues that the Court's holding that his negligence and wantonness claims are subsumed by the AEMLD will deprive him of a common-law remedy in violation of the Alabama constitution. However, this argument is completely meritless, as the AEMLD itself is a common-law remedy fashioned by the Alabama Supreme Court, the body charged with interpreting the state constitution.